## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PINCHAS RAUL,<br><br>    Plaintiff,<br><br> v.<br><br><br>MONTAGE RESOURCES CORPORATION, RANDALL ALBERT, MARK BURROUGHS, GENE DAVIS, DON DIMITRIEVICH, RICHARD PATERSON, D. MARTIN PHILLIPS, JOHN REINHART, DOUGLAS SWANSON, and ROBERT ZORICH,<br><br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Pinchas Raul ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Montage Resources Corporation ("Montage" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Montage and the Defendants.

**SUMMARY OF THE ACTION**

1.      This is an action brought by Plaintiff against Montage and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by Southwestern Energy Company ("Southwestern") (the "Proposed Transaction").

2.      On August 12, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Southwestern.  Pursuant to the terms of the Merger Agreement the Company's shareholders will receive 1.8656 shares of the Southwestern common stock for each share of Montage common stock owned (the "Merger Consideration").

3.      On October 6, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The Company will hold a special meeting of its stockholders on November 12, 2020, among other things, to adopt the Proposed Transaction.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Montage and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Montage shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Montage shares.

9.      Defendant Montage is incorporated under the laws of Delaware and has its principal executive offices located at 122 West John Carpenter Freeway, Suite 300, Irving, Texas 75039.  The Company's common stock trades on the NYSE under the symbol "MR."

10.     Defendant Randall Albert ("Albert") has been the Company's Chairman of the Board at all times during the relevant time period.

11.     Defendant Mark Burroughs ("Burroughs") is and has been a member of the Company's Board at all times during the relevant time period.

12.     Defendant Gene Davis ("Davis") is and has been a member of the Company's Board at all times during the relevant time period.

13.     Defendant Don Dimitrievich ("Dimitrievich") is and has been a member of the Company's Board at all times during the relevant time period.

14.     Defendant Richard Paterson ("Paterson") is and has been a member of the Company's Board at all times during the relevant time period.

15.     Defendant D. Martin Phillips ("Phillips") is and has been a member of the Company's Board at all times during the relevant time period.

16.     Defendant John Reinhart ("Reinhart") is and has been the Company's Chief Executive Officer, President, and member of the Company's Board at all times during the relevant time period.

17.     Defendant Douglas Swanson ("Swanson") is and has been a member of the Company's Board at all times during the relevant time period.

18.     Defendant Robert Zorich ("Zorich") is and has been a member of the Company's Board at all times during the relevant time period.

19.     Defendants Albert, Burroughs, Davis, Dimitrievich, Paterson, Phillips, Reinhart, Swanson, and Zorich are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants, along with Defendant Montage, are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

21.     Montage is an exploration and production company with approximately 195,000

net effective core undeveloped acres currently focused on the Utica and Marcellus Shales of

Southeast Ohio, West Virginia, and North Central Pennsylvania.

**The Company Announces the Proposed Transaction**

22.     On August 12, 2020, the Company jointly issued a press release announcing the

Proposed Transaction.  The press release stated in part:

> SPRING, Texas--(BUSINESS WIRE)--Southwestern Energy Company (NYSE: SWN) and Montage Resources Corporation (NYSE: MR) today announced that they have entered into a definitive merger agreement under which Southwestern Energy will acquire Montage Resources in an all-stock transaction. Based on the 3-day average closing share prices of the companies as of August 11, 2020 and under the terms of the agreement, Montage Resources shareholders will receive 1.8656 shares of Southwestern for each Montage Resources share. The transaction is expected to close in the fourth quarter of 2020, subject to customary closing conditions, including the approval of the Montage Resources shareholders.
>
> Highlights include:
>
> - Represents a step change in free cash flow; approximately $100 million annual free cash flow beginning in 2021 based on current strip pricing;
> - Accretive to per share financial metrics as well as leverage, margin and returns;
> - Anticipated synergies of approximately $30 million in annual G&A savings captured following the transaction close, in addition to operational efficiencies;
> - Maintains peer leading maturity runway and strong balance sheet;
> - Combined company will be the third largest producer in Appalachia, expected total equivalent production of approximately 3 Bcfe per day; and
> - Enhances economic inventory, with investment opportunities in proven, high-return Marcellus super rich and core Utica dry gas windows.
>
> "This is an exciting step for Southwestern as we expand our Appalachia footprint with the high-quality assets of Montage. As we have consistently stated, we are firm believers in the benefits of value-creating consolidation. This transaction further solidifies the Company's position as a premier Appalachia operator and provides additional scale and synergies strengthened by our leading operational

execution. Consistent with our strategy, this transaction is expected to deliver increased free cash flow, improved returns and long-term value to shareholders," said Bill Way, Southwestern Energy President and Chief Executive Officer.

Way continued, "This acquisition is expected to deliver on all criteria of an accretive, value-adding transaction for the shareholders of both Southwestern Energy and Montage Resources. Southwestern Energy has consistently and methodically taken steps to enhance its resilience over the last few years, and this transaction solidifies that path and delivers on the commitment to responsibly manage the balance sheet and return to free cash flow."

John Reinhart, President and CEO of Montage Resources, commented, "This transaction creates a compelling opportunity for both Southwestern Energy and Montage Resources shareholders to benefit from the strength of the consolidated company. The combination creates a Company of substantial scale with capabilities to enhance cash flow generation and a strong balance sheet that provides opportunities for enhanced shareholder value creation. We appreciate all of the great work by Montage employees in forming a very attractive business that will continue to build upon the success of Southwestern Energy."

Concurrently, Southwestern also commenced a registered underwritten public offering of 55,000,000 shares of its common stock, with the proceeds expected to be used to retire a portion of Montage Resources' 8.875% Senior Notes due 2023. The remaining portion of the Montage notes outstanding have the potential to be refinanced opportunistically.

\*      \*      \*

**Advisors**

Citi and Goldman Sachs & Co. LLC are acting as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor to Southwestern. Barclays is acting as financial advisor and Norton Rose Fulbright LLP is acting as legal advisor to Montage Resources. Vinson & Elkins LLP is acting as legal advisor to EnCap Investments, L.P.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

23.     On October 6, 2020, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Proxy Statement prior to its

filing with the SEC and dissemination to the Company's shareholders to ensure that it did not

contain any material misrepresentations or omissions.    However, the Proxy Statement

misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions regarding whether to vote in favor of the Proposed

Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

25.     The Proxy Statement contains projections prepared by the Company's and

Southwestern's management concerning the Proposed Transaction, but fails to provide material

information concerning such.

26.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can

be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs

regarding forward-looking information, such as financial projections, explicitly requires

companies to provide any reconciling metrics that are available without unreasonable efforts.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND      EXCHANGE      COMMISSION      (May      17,      2017),      *available      at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

27.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28.     Specifically, with respect to each set of projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBITDAX; (ii) CFFO; and (iii) free cash flow.

29.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Barclays' Financial Opinion

30.     The Proxy Statement contains the financial analyses and opinion of Barclays Capital Inc. ("Barclays") concerning the Proposed Transaction, but fails to provide material information concerning such.

31.     With respect to Barclays' *Net Asset Valuation Analysis*, the Proxy Statement fails to disclose: (i) the future after-tax cash flows used in the analysis and all underlying line items; (ii) the after-tax general and administrative costs for Montage and Southwestern; (iii) the other capital expenditure and cost adjustments for Montage; (iv) the value of hedges for each of Montage and Southwestern; (v) the drilling and completion costs for Montage and Southwestern; (vi) the value of midstream and marketing earnings for Southwestern; (vii) the value of firm transportation commitment shortfalls for Southwestern; (viii) the carryover basis and NOL

balances for Montage and Southwestern; and (ix) the range of discount rates used in the analysis

and the underlying inputs and assumptions.

32.     With respect to Barclays' *Selected Comparable Company Analysis*, the Proxy

Statement fails to disclose the individual multiples and metrics for the each of the companies

observed by Barclays for its analysis.

33.     With respect to Barclays' *Selected Comparable Transaction Analysis*, the Proxy

Statement fails to disclose the individual multiples and metrics for the each of the transactions

observed by Barclays for its analysis.

34.     With respect to Barclays' *Pro Forma Merger Consequences Analysis*, the Proxy

Statement fails to disclose the range of valuation multiples applied to the Montage EBITDAX for

2021.

35.     With respect to Barclays' *Transaction Premium Analysis*, the Proxy Statement

fails to disclose the premiums paid in each of the transactions observed by Barclays for its

analysis.

36.     With respect to Barclays' *Equity Research Analyst Price Targets Analysis*, the

Proxy Statement fails to disclose the price targets observed in the analysis as well as the sources

thereof.

37.     When a banker's endorsement of the fairness of a transaction is touted to

shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and

range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover,

the disclosure of projected financial information is material because it provides shareholders with

a basis to project the future financial performance of a company and allows shareholders to

better understand the financial analyses performed by a financial advisor in support of its fairness

opinion.

38.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)**
**of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     Defendants have issued the Proxy Statement with the intention of soliciting

shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

44.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

45.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The

Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

47.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

48.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Montage within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Montage, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

53.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 15, 2020                                    Respectfully submitted,

                                                           By: */s/ Joshua M. Lifshitz*
                                                           Joshua M. Lifshitz
                                                           Email: jml@jlclasslaw.com
                                                           **LIFSHITZ LAW FIRM, P.C.**
                                                           821 Franklin Avenue, Suite 209
                                                           Garden City, New York 11530
                                                           Telephone: (516) 493-9780
                                                           Facsimile: (516) 280-7376

                                                           *Attorneys for Plaintiff*